**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**AMY V.**

                         **Plaintiff,**                         **21-CV-01283-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                         **Defendant.**

_____

**DECISION AND ORDER**

As set forth In the Standing Order of the Court regarding Social Security
Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have
consented to the assignment of this case to the undersigned to conduct all proceedings
in this case, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).
Dkt. #11.

**BACKGROUND**

On July 30, 2019, plaintiff, at the age of 43, protectively applied for Title II
Social Security Disability Benefits with the Social Security Administration ("SSA"). Dkt.
#6, pp. 67, 180-181.[1] Plaintiff alleged she was disabled due to elbow surgeries and gastric
issues, with an onset date of September 5, 2017. Dkt. #6, p. 204-211.

The SSA denied plaintiff's claims initially on December 3, 2019, and on
reconsideration on August 6, 2020. Dkt. #6, pp. 68-76, 80-85.

_____

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Dkt. #6, pp. 98-99, and a telephonic hearing was held on January 5, 2021 before ALJ Paul Georger. Dkt. #6, pp. 34-58. Plaintiff appeared with counsel at the hearing.

Plaintiff testified that she is 5' 2½" tall and weighs 171 pounds. Dkt. #6, p. 40. She graduated from high school and is able to read, write, and do some math. Dkt. #6, p. 41. Plaintiff last worked as a housekeeper. Dkt. #6, p. 42.

Plaintiff testified that she began experiencing pain in her right elbow and hand in September 2017, and that it causes numbness in her fingers. Dkt. #6, pp. 44-45. Although she has undergone three surgeries, she still has pain and numbness every day. Dkt. #6, p. 45. She tries to use her left hand for personal care activities such as brushing her teeth. Dkt. #6, p. 45.

Plaintiff also testified that she takes prescription pain and nerve medicine; ices and massages her arm; and sometimes wears a compression sleeve. Dkt. #6, p. 46. She tried medical marijuana, but it was not helpful. Dkt. #6, p. 46.

Regarding her daily activities, plaintiff testified that her son or her boyfriend washes her hair, and she wears sweatpants rather than jeans. Dkt. #6, p. 48. She tries to help with chores, but she cannot cook or lift any laundry that is heavy. Dkt. #6, pp. 48-49. She also needs help walking her dog. Dkt. #6, p. 49.

Plaintiff testified that she has difficulty grasping with her right hand and recently dropped a coffee pot and broke it. Dkt. #6, pp. 49-50. She also rarely drives anymore because her reflexes are so poor in her right arm. Dkt. #6, pp.51-52.

The ALJ also heard testimony from James Sarno, a vocational expert ("VE"). The ALJ first asked the VE whether a claimant limited to medium work, with frequent handling with the right hand and frequent reaching in all directions with the right arm, would be able to perform plaintiff's past work as a housekeeper. Dkt. #6, p. 55. The VE testified that she could.

The ALJ then asked the VE to assume a second hypothetical where the person would be:

> limited to light work, with occasional handling with the right hand and occasional reaching in all directions with the right arm; occasional use of ramps and stairs; occasional use of ladders, ropes and scaffolds; and occasional balancing, stooping, kneeling, crouching and crawling.

Dkt. #6, p. 55. Given these restrictions, the VE opined that plaintiff would not be able to perform her past work. Dkt. #6, p. 55.

Next, the ALJ asked the VE whether—given plaintiff's age, education, past relevant work experience, and the restrictions in the second hypothetical—there were unskilled jobs in the national economy that plaintiff could perform. Dkt. #6, p. 55. The VE testified that plaintiff could perform the unskilled light work jobs of furniture rental clerk, laminating-machine offbearer, and surgical instruments inspector. Dkt. #6, pp. 55-56.

The ALJ then presented the VE with a third hypothetical where plaintiff would be limited to sedentary work, with no handling with the right hand, and no reaching, in any direction with the right arm; no use of ramps and stairs; no use of ladders, ropes or scaffolds; no balancing, stooping, kneeling, crouching or crawling; and she would be off task 20 percent of the workday and absent two or more days per month. Dkt. #6, p. 56.

The VE testified that, under the third hypothetical, there were no jobs in the national economy that plaintiff could perform. Dkt. #6, p. 56.

On January 28, 2021, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #6, pp. 17-29. The Appeals Council denied plaintiff's request for review on November 4, 2021, making the ALJ's decision the final decision of the Commissioner. Dkt. #6, pp. 5-10. Plaintiff filed this action on December 15, 2021. Dkt. #1.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501

(2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to

demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since the alleged onset date of  September 5, 2017; (2) plaintiff has the severe impairments of right ulnar neuropathy and right cubital tunnel syndrome, status post three cubital tunnel release surgeries, and degenerative disc disease of the cervical spine;  (3) plaintiff's impairments do not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2] except she can only handle items occasionally with the right hand, and occasionally reach in all directions with the right arm; she can climb ramps and stairs occasionally; climb ladders, ropes or scaffolds occasionally; balance occasionally; stoop occasionally; kneel occasionally; crouch occasionally; and crawl occasionally; (5) plaintiff is unable to perform her past relevant work of being a housekeeper; and (6) plaintiff is capable of working as a furniture retail clerk, laminating machine offbearer, and inspector of surgical instruments, and is not, therefore, disabled within the meaning of the SSA. Dkt. #4, pp. 12-24. Dkt. #6, pp. 19-29.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)). Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario*

*v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

## Challenge to the ALJ's Decision

Plaintiff's sole challenge to the ALJ's decision is that he "rejected the opinion evidence . . . and decided an RFC with reference only to his lay judgment in a decision evidencing a clear substitution of his lay judgment for any medical expert opinion." Dkt. #7-1, pp. 1, 10.

## The ALJ's Formulation of Plaintiff's RFC

The ALJ began consideration of plaintiff's RFC by reviewing her function report dated September 11, 2019. Dkt. #6, p. 22. In that report, plaintiff stated that she cares for her son, makes him breakfast, and walks the dog with assistance. Dkt. #6, p. 214. She reported that she uses her left arm for personal care tasks and for driving. Dkt. #6, p. 215.  As for cooking, plaintiff reported that her boyfriend cooks but that she could handle finger foods, yogurts, and other light things. Dkt. #6, p. 215. She uses her left arm to do household chores but needs help lifting. Dkt. #6, pp. 215-216.

Plaintiff also reported that she takes daily walks; is able to drive alone and has a license; goes shopping with her boyfriend; and is able to pay bills and handle a bank account. Dkt. #6, pp. 216-217. She reported hobbies of daily walks, reading, and watching television. Dkt. #6, p. 217.

Plaintiff noted that she has no problems standing, walking, climbing stairs, kneeling, or squatting, but that she cannot reach, push, or pull with her right arm or hand. Dkt. #6, p. 218. She uses a brace/splint and compression sleeve as needed. Dkt. #6, p. 219.

Finally, plaintiff stated that she experiences constant pain in her right arm from the elbow down and has undergone three surgeries, but pain medications ease the pain. Dkt. #6, p. 221.

The ALJ next reviewed plaintiff's testimony at the administrative hearing, as discussed above. Dkt. #6, p. 22.

After reviewing this information, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." Dkt. #6, p. 22.

In this regard, the ALJ referenced plaintiff's function report which described her activities of daily living which, in his view, "require a measure of physical demands, which are not entirely consistent with the level of limitation the claimant alleges." Dkt. #6, p. 23.

The ALJ next reviewed plaintiff's medical records from late 2017 to late 2020, observing that this objective evidence "reflects that the claimant is not as limited as alleged." Dkt. #6, p. 23. Specifically, the ALJ noted treatment notes from November 7, 2017, when plaintiff was evaluated by an orthopedic physician assistant ("PA"). Dkt. #6, pp. 375-75. After noting plaintiff's subjective complaints, the PA recorded his objective findings: plaintiff walked with a smooth and reciprocal gait; she had full range of motion in her neck; she had strength of 5/5 in her shoulders, wrists, and fingers; and a spinal x-ray showed no acute fractures, some degenerative disc disease, and mild hypertrophy in the mid-cervical spine. Dkt. #6, p. 375. Plaintiff was prescribed tramadol for pain, and an MRI later showed osteoarthropathy and a small disc protrusion at C5-6. Dkt. #6, p. 378.

The ALJ noted that plaintiff underwent an EMG in December 2017, which showed "mild" ulnar neuropathy at the right elbow. Dkt. #6, p. 388. The ALJ also reviewed medical records from 2018 when plaintiff was seen at another orthopedic practice. Dkt. #6, p. 23. That examination showed that plaintiff had full range of motion in her right elbow but some diminished strength and sensation. Dkt. #6, p. 336.

Plaintiff was diagnosed with right cubital tunnel syndrome and underwent two surgeries in the summer of 2018. Dkt. #6, p. 24. Plaintiff reported improvement in her symptoms, and at a follow-up examination on September 17, 2018, she stated she was doing well and was interested in returning to a light duty job. Dkt. #6, pp. 339-349.

The ALJ then noted that plaintiff reported a return of pain and numbness in her right arm in the winter of 2018, and that she underwent a third cubital tunnel surgery in January 2019. Dkt. #6, p. 24. After the third surgery, plaintiff reported doing well, her pain was getting better, her right arm felt "different," and she felt her right hand was "waking up." Dkt. #6, pp. 351-362.

The ALJ then reviewed plaintiff's medical records from spring 2019 through the fall of 2020. Dkt. #6, pp. 25-26. Although plaintiff periodically reported continued pain and numbness in her right arm and hand, she displayed "excellent" range of motion in her elbow; she reported and was assessed as improving despite those symptoms; she exhibited near full extension and could touch her hands to her shoulder; and her treatment "remained conservative." Dkt. #6, pp. 25-26.

The ALJ thus concluded that, given this evidence, "a limitation to light exertion with postural restrictions for [plaintiff's] cervical spine issues, as well as, no more than occasional handling with the right hand, and occasional reaching in all directions with the right arm are reasonable, in conjunction with a limitation to light work, in consideration of these upper extremity impairments." Dkt. #6, p. 26. The ALJ further

concluded, however, that "no additional limitations are warranted, given the treatment records and objective findings outlined above." Dkt. #6, p. 26.

The ALJ next considered the opinions of two state agency reviewing medical consultants, Dr. D. Miller, DO and Dr. J. Lawrence MD. Dkt. #6, p. 27. Dr. Miller opined that plaintiff could perform light work, had no postural limitations, and had manipulative limitations only with regard to fingering on her right hand. Dkt. #6, pp. 63-64.

The ALJ found Dr. Miller's opinion "somewhat persuasive," but he concluded that it was not restrictive enough given plaintiff's testimony concerning her residual right upper extremity pain and numbness. Dkt. #6, p. 27.

As to Dr. Lawrence, the ALJ found his opinion that plaintiff could perform medium work with no further limitation "unpersuasive." Dkt. #6, p. 27. The ALJ explained that this opinion was belied by the objective findings in plaintiff's treatment records that plaintiff had both postural limitations as well as limitations in the use of her right hand and arm. Dkt. #6, p. 27.

### The ALJ Did Not Err in Crafting Plaintiff's RFC

Plaintiff first argues that the ALJ erred by "rejecting" the opinions of Drs. Miller and Lawrence. This argument is without merit.

First, the ALJ did not wholly reject Dr. Miller's opinion. Rather, he found it "somewhat persuasive" in that Dr. Miller opined that plaintiff had manipulative limitations in her right hand, but he found that additional limitations were warranted by the record. It is well established that an ALJ may accept part of a doctor's opinion and reject others. *Jacqueline C. v. Comm'r of Soc. Sec.*, CASE #20-cv-01606, 2022 WL 4632226, at *6 (W.D.N.Y. Sept. 30, 2022) (citing *Camille v. Colvin*, 652 F. App'x 26, 29 n.5 (2d Cir. 2016)).

Second, the ALJ explained that he found Dr. Lawrence's opinion "unpersuasive" because it was "belied" by objective findings of record. Dkt. #6, p. 27. This is consistent with applicable regulations. *See* 20 C.F.R. § 416.920c(c)(1) (persuasiveness of medical source opinion turns, in part, on whether it is supported by objective medical evidence).

Indeed, it is odd that plaintiff faults the ALJ for not accepting Dr. Miller's or Dr. Lawrence's opinion about plaintiff's capabilities given that the RFC that the ALJ reached was more favorable to plaintiff than those suggested by either of these medical sources. This fact generally weighs against remand. *See Jacqueline C.*, 2022 WL 4632226, at *4 ("Remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record." (citation and internal quotation marks omitted).

Plaintiff also argues that the ALJ erred in basing the RFC on his own interpretation of raw medical data. This assertion is not supported by the record.

In finding that Dr. Miller's opinion as to plaintiff's limitations was not sufficiently restrictive, the ALJ relied—not on medical data—but on "claimant's testimony that she continues with residual right upper extremity pain and numbness." Dkt. #6, p. 27. This, too, is consistent with applicable regulations. *See* 20 C.F.R. § 416.945(a)(3) ("We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, *provided by you*. . .").

Furthermore, "an ALJ's RFC determination is not flawed merely because it was formulated absent a medical opinion." *Jacqueline C.*, 2022 WL 4632226, at *4. "The Second Circuit has held that where, the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Id.* (citation and internal quotation marks omitted).

As noted above, the ALJ considered plaintiff's treatment records from 2017 to 2020, including diagnostic tests and examinations. He also weighed her testimony concerning the pain and numbness she experienced, finding that the record supported her "allegations regarding difficulty lifting, carrying, reaching and handling." Dkt. #6, p. 27. Thus, contrary to plaintiff's argument, the ALJ did not develop the RFC "based solely on his own lay judgment." Dkt. #7-1, p. 11.[3]

---

[3] Plaintiff's reliance on *Hayes v. Comm'r of Soc. Sec.*, Case #18-CV-963-FPG, 2020 WL 728271 (W.D.N.Y. Feb. 13, 2020), is thus misplaced. There, the Court concluded that the ALJ had

Finally, plaintiff argues that the ALJ improperly determined that plaintiff's cervical issues "were adequately accounted for by occasional handling and reaching with the right arm." Dkt. #7-1, at 13. This is a straw-man argument because it ignores the RFC's overall limitation of "light work," which the ALJ determined was sufficient to account for plaintiff's cervical spine issues. Dkt. #6, pp. 26-27.

The ALJ's formulation of plaintiff's RFC thus clearly conforms to applicable Second Circuit authority that the RFC need not perfectly correspond to any particular medical opinion and that the ALJ is to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted).

For all these reasons, the Court concludes that the ALJ's findings are supported by substantial evidence.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #7) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #9) is granted.

The Clerk of Court is directed to close this case.

---

interpreted raw medical data in functional terms, including the effect of an eye condition on plaintiff's workplace limitations. *Id.* at *3. Here, the ALJ based his RFC on plaintiff's own testimony, as well as on objective measurements of her abilities and limitations found in the record. *Hayes* thus is inapposite.

**SO ORDERED.**

DATED:       Buffalo, New York

             January 30, 2024


                                     s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**